UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID CALEF,

                Petitioner,

-vs-                                                            Case No. 8:04-cv-895-T-17EAJ

JAMES V. CROSBY, JR.,

                Respondent.
_____/

**ORDER**

This cause is before the Court on Petitioner David Calef's 28 U.S.C. § 2254 petition for writ of habeas corpus. He is proceeding on his amended petition (Doc. No. 5) (hereinafter "petition"). Petitioner challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida, in circuit court case number CRC97-01262CFANO.

BACKGROUND

On June 24, 1997, petitioner was charged by Second Amended Felony Information with one count of sexual battery and one count of violation of a domestic violence injunction. The case proceeded to trial July 15 and 16, 1997, before the Honorable Brandt C. Downey, III, Circuit Judge. Petitioner was represented by assistant public defender Michael Tewell. The Jury found Petitioner guilty as charged. On July 16, 1997, the court adjudicated Petitioner guilty and sentenced him to eighteen years imprisonment on the sexual battery count and one year in the Pinellas County Jail on the violation of domestic violence injunction count. The sentences were concurrent.

Calef, represented by retained counsel, Randell Hafner, Esq. appealed, raising seven issue. (Exhibit 1). The State subsequently filed its answer brief (Exhibit 2), and Calef's counsel filed a reply brief. (Exhibit 3) . Oral argument was heard by the Second District Court of Appeal on September 9, 1998. On September 18, 1998, in Case No. 2D97-03479, per curiam affirmed the conviction and sentence. (Exhibit 4). Calef v. State, 720 So. 2d 523 (Fla. 2d DCA 1998) [Table].

On April 1, 1999, Calef's attorney, Randell Hafner, filed a Motion for postconviction Relief and Memorandum of Law in Support pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, raising four ground for relief. (Exhibit 6). The State, pursuant to the state trial court's order to show cause filed a response to the Rule 3.850 motion on May 19, 1999. (Exhibit 7).

On July 30, 1999, the court issued an order granting an evidentiary hearing in part and denying the motion for postconviction relief in part.[1] (Exhibit 8) . The evidentiary hearing was held before the Honorable Mark I. Shames, Circuit Judge, on October 29, 1999. (Exhibit 9). Following the hearing, the State and Calef submitted written final arguments. (Exhibits 10 and 11, respectively) . On November 15, 1999, the court rendered a final order denying the Rule 3.850 motion. (Exhibit 12). After setting out the proper standard for analyzing claims of ineffective assistance of counsel pursuant to Strickland v. Washington, 466 U.S. 668 (1984), the court made the following findings of fact and conclusions of law:

---

[1]The issue to be resolved at the evidentiary hearing, and the only issue pertinent to this federal proceeding, was whether trial counsel was ineffective for failing to present alleged alibi witness Steven Lamonte at trial.

Defendant's remaining claim alleges ineffective assistance of counsel. Specifically, Defendant alleges that trial counsel failed (or refused) to present an alibi witness to the jury. In support of this allegation, Defendant provided a sworn affidavit from the alleged alibi witness, Stephen Lamonte, who states that he was available and willing to testify at trial that the Defendant was with him during the time the crime was committed. Further, Defense counsel knew of Mr. Lamonte's testimony before trial and listed him as an alibi witness. The state deposed Mr. Lamonte before trial and his testimony was consistent with the facts alleged in his affidavit. A requisite evidentiary hearing was held before this court in order to resolve this issue. Moore v. State, 693 So. 2d 571 (Fla. 2d DCA 1997) .

. . .

During the evidentiary hearing, the Defendant's witnesses corroborated that Lamonte was deposed by the State prior to trial, that Lamonte was to be called as an alibi witness for the Defense, and during the trial the Defendant's counsel, Michael Tewell, decided not to call Lamonte to testify. Tewell had a choice between calling the alibi witness and having final closing argument. He decided that the latter would be more beneficial. Lamonte did testify at the evidentiary hearing and in his deposition that he was with the Defendant 90% of the time between October 6th and 7th.

Michael Tewell testified, referring to his trial notes, that Lamonte conceded to him that he was only 75% sure that he could provide an alibi for the Defendant, that he might vacillate on the stand, and that his memory was not that good. Tewell relied on this statement during trial and decided it rendered Lamonte's prior deposition useless. The Defense's trial strategy was to attack the credibility of the victim. Tewell testified that he valued the opportunity to make a second closing argument to be more instrumental in achieving this objective than putting an unsure alibi witness on the stand. Tewell then consulted with Defendant and told him that he did not consider Lamonte a strong alibi witness. Tewell testified that Defendant agreed with this recommendation and strategy.

While both Lamonte and the Defendant contradicted Tewell's testimony to an extent, the Court considered the demeanor, credibility and relative interests of the witnesses. The Court finds that the Defendant has failed to prove the first prong of the Strickland test, that counsel's performance was deficient. There is no need to proceed with an analysis of the second part of the test, that the outcome would have been different absent counsel's deficient performance. See Strickland at 668; Johnson at 209. There is no indication of ineffective assistance of counsel because the testimony of the parties reveals that the decision not to call an unsure alibi

>   witness was clearly tactical concerning a matter within the discretion of the attorney. Tewell's decision to sacrifice the testimony of the unreliable witness in order to preserve a second closing argument is within the range of what is expected of reasonably competent counsel. See Buford at 355; Stevens at 1082. Tewell further testified that he consulted with the Defendant and that the Defendant agreed with this method of strategy. The Defendant's testimony does not refute this assertion.
>
>   The case law cited by the Defendant in support of the motion is distinguishable from the facts of the current case. The case Young v. State, 511 So. 2d 735, 736 (Fla. 2d DCA 1987) does support the claim that counsel's failure to call alibi witnesses can be considered inadequate assistance of counsel. However, counsel in the case failed to attempt any interviews with three alibi witnesses set *forth* by the defendant. In the current case, Tewell did interview Lamonte through the deposition and questioned him again during the trial before deciding not to call him to testify. In Roesch v. State, 627 So. 2d 57, 58 (Fla. 2d DCA 1993), counsel made the tactical decision not to call alibi witnesses before completing his own investigation of the witnesses and possible defenses. Tewell did conduct a proper investigation into the alibi witness through deposition, considered him for trial, and upon further interviewing, decided Lamonte to be an unreliable risk.

(Exhibit 12 -- Order Denying Motion for Postconviction Relief at pp. 2, 4-6). Calef appealed the adverse rulings. On March 8, 2000, Calef filed a pro se initial brief, raising the following two issues: (1) the trial court erred by its use of the wrong standard of review in determining the performance prong under Strickland v. Washington, 466 U.S. 668 (1984); (2) the trial court erred by its failure to append to the order of denial portions of the records and files that clearly show Calef is not entitled to relief. (Exhibit 13). The State later filed its answer brief (Exhibit 14), and Calef filed his reply brief. (Exhibit 15).

On December 22, 2000, in Case No. 2D99-4709, the appellate court per curiam affirmed the denial of postconviction relief. (Exhibit 16). Calef v. State, 781 So. 2d 1090 (Fla. 2d DCA 2000) [Table]. The mandate was issued on January 31, 2001. (Exhibit 17).

On February 9, 2001, Calef, filed a pro se motion to correct illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure. (Exhibit 18). He

filed an amended motion to correct illegal sentence on June 6, 2001. (Exhibit 19). Calef claimed that he was illegally sentenced pursuant to Ch. 95-184, Laws of Florida, because the law was unconstitutional due to a violation of Florida's single-subject rule. See Heggs v. State, 759 So. 2d 620 (Fla. 2000). On July 25, 2002, the State filed a response to the state trial court's show cause order. (Exhibit 20). The state trial court subsequently issued a written order granting in part and denying in part the motion to correct illegal sentence. (Exhibit 21). The court opined that Calef was entitled to relief on the eighteen-year sentence imposed in Count I (sexual battery), because the sentence exceeded the recommended guidelines range for the 1994 guidelines. However, the court denied any relief on the one-year jail sentence imposed in Count II. A re-sentencing hearing was held before Judge Downey on September 19, 2002. (Exhibit 22). The court re-sentenced Calef on Count I to fifteen years incarceration. (Exhibit 23). Calef

    Calef appealed. Calef's appointed counsel, assistant public defender Jeffrey M. Pearlman, filed an Anders[2] brief stating that he could find no meritorious argument to support the contention that the trial court committed significant reversible error in the case. (Exhibit 24). Mr. Pearlman directed the appellate court's attention to two possible issues for review: (1) Whether the trial court erred in re-sentencing Calef; (2) whether the trial court erred in refusing to reduce the number of victim injury points on the scoresheet. Calef did not file a supplemental pro se brief, even though invited to do so by the court. (Exhibit 25). The State later filed its answer brief. (Exhibit 26). On September 5, 2003, in Case No. 2D02-4349, the Second District Court of Appeal of Florida issued a per curiam

---

[2] Anders v. California, 386 U.S. 738 (1967).

unwritten opinion affirming Calef's judgment and sentence. (Exhibit 27). Calef v. State, 860 So. 2d 416 (Fla. 2d DCA 2003) [Table] . The mandate was issued on September 30, 2003. (Exhibit 28).

On October 18, 2002, Calef, filed a second pro se Rule 3.850 motion for postconviction relief. (Exhibit 29). The motion was based on a claim of newly-discovered evidence, consisting of written statements from five people who allegedly could have provided an alibi for Calef at the time of the offense. On April I, 2003, the state trial court rendered a written order summarily denying Calef's claim for relief, finding that the witness statements did not satisfy the test for newly-discovered evidence under Florida law. (Exhibit 30).

Calef then filed a motion for rehearing I(Exhibit 31), which was denied by the trial court. (Exhibit 32). Calef challenged the denial of relief on appeal. On December 10, 2003, in Case NO. 2D03-2247, the appellate court filed an unwritten per curiam affirmance of the trial court's summary denial of postconviction relief. (Exhibit 33). Calef v. State, 865 So. 2d 490 (Fla. 2d DCA 2003)[Table]. Calef filed a motion for rehearing and reconsideration in the appellate court (Exhibit 34), which was denied on January 15, 2004. (Exhibit 35). The court issued its mandate on January 28, 2004. (Exhibit 36).

Calef then timely filed the present federal petition for writ of habeas corpus raising two grounds for relief.

STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. Williams v. Taylor, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002).

To have a facially valid claim in alleging ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland's two-part test requires a Petitioner to demonstrate that counsel's performance was deficience and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## DISCUSSION

The issues have been fully briefed and the case is ready for decision. No evidentiary hearing is necessary because the record is fully developed and the claims of the Petition raise issues of law, not issues of fact. All of the claims lack merit and the Petition will be **DENIED**.

Ground One

Calef claims the state trial court violated Calef's constitutional right to a fair and impartial trial by allowing introduction of improper collateral crime evidence in violation of the state's "Williams Rule."[3] This claim must be denied. First, Calef failed to exhaust this claim under a theory of federal constitutional violation. A review of Calef's initial brief in his state appeal reveals that Calef cited *only* state case law in support of this argument. (Exhibit 1; Initial Brief of Appellant at pp. 6-15). Calef did not contend that he was denied a fair trial or that his due process rights were violated. By shaping his claim in such a manner, Calef failed to properly present a federal constitutional question for exhaustion in the state courts.

Although Calef now seeks federal review of a state evidentiary matter, federal habeas corpus relief is generally not available for errors of state law and is available only to correct constitutional injury. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Pulley v. Harris, 465 U.S. 37 (1984); Wainwright v. Goode, 464 U.S. 62, 67 (1983). The federal court possesses limited authority to consider a state evidentiary ruling in a habeas corpus proceeding. Burgett v. Texas, 389 U.S. 109, 113-114 (1967). The court must limit its review of a state evidentiary ruling to an examination of whether the ruling violated federally guaranteed rights, Nordskog v. Wainwright, 546 F. 2d 69, 72 (5th Cir. 1977), such as the denial of fundamental fairness. Hall v. Wainwright, 733 F. 2d 766, 770 (11th Cir. 1984). "As a guideline for applying the criterion of fundamental fairness, the erroneous admission of prejudicial evidence can justify habeas corpus relief only if it is

---

[3] Williams v. State, 110 So. 2d 654 (Fla. 1959).

'material in the sense of a crucial, highly significant factor.' " Dickson v. Wainwright, 683 F.2d 348, 350 (11th Cir. 1982) (citations omitted). The category of infractions that violate fundamental fairness is narrowly defined. Estelle v. McGuire, 502 U.S.62, 73 (1991). In most instances, evidentiary rulings do not raise a federal constitutional question. McCullough v. Singletary, 967 F. 2d 530, 535-536 (11th Cir. 1992), cert. denied, 507 U.S. 975 (1993).

Calef defaulted Ground One because he failed to present a federal constitutional claim at trial and on direct appeal. Pursuant to Duncan v. Henry, 513 U.S. 364 (1995), Calef must fairly present the substance of his federal claim to the state courts in order to satisfy the exhaustion requirement. Briefing an issue as a matter of state law, however, is not sufficient to exhaust a federal claim of the equivalent ground. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. at 364. Accord Anderson v. Harless, 459 U.S. 4 (1982).

When a habeas petitioner procedurally defaults a federal claim in state court, the federal courts will not review the claim unless the petitioner can demonstrate that cause for the default exists and that actual prejudice resulted, or that "failure to consider the claim [ ] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). In this case, Calef has not alleged or shown that either of these

circumstances exist. On direct appeal, Calef claimed the trial court erred in admitting collateral act evidence relating to Calef's beating, raping, and threatening the victim, as well as statements that the victim was afraid of Calef. The State correctly argued in its answer brief that contrary to Calef's contention that the Williams' Rule evidence was offered solely to prove Calef's bad character; the complained-of evidence was admissible under state law because such evidence was relevant in demonstrating the nature of the relationship between Calef and the victim and was relevant to the charged domestic violence injunction. Moreover, any error in admission of the evidence was harmless. (Exhibit 2; Answer Brief of Appellee at pp. 2-6).

Calef's additional allegations raised in ground one have no merit, and ground one does not warrant federal habeas corpus relief.

### Ground Two

Calef claims his trial counsel was ineffective for failing to call Mr. Steven Lamonte to testify as an alibi witness at Calef's trial. The state court reasonably denied this claim, finding that counsel's performance was not deficient under the first prong of the Strickland test.

During the evidentiary hearing, Calef's witnesses corroborated that Lamonte was deposed by the State prior to trial; that Lamonte was to be called as an alibi witness for the defense; and during the trial, Calef's counsel, Michael Tewell, decided not to call Lamonte to testify. (Exhibit 9, Evidentiary Hearing Transcript, at 211-212, 214). Mr. Tewell had a choice between calling the alibi witness and having final closing argument. He decided that the latter would be more beneficial. (Id. at 214-215). Lamonte did testify at the

evidentiary hearing and in his deposition that he was with Calef 90% of the time between October 6th and 7th. (Id. at 217-218).

Michael Tewell testified at the hearing, referring to his trial notes, that in an interview subsequent to the deposition, Lamonte conceded to him that he was only 75% sure that he could provide an alibi for Calef, that he [Lamonte] might vacillate under cross-examination, and that his memory was not that good. (Id. at 230 231). Mr. Tewell relied on this statement during trial and decided this statement rendered Lamonte's prior deposition useless. (Id. at 238, 239, 244). The defense strategy at trial was to attack the credibility of the victim. (Id. at 234). Mr. Tewell testified that, as a matter of trial strategy, he valued the opportunity to made a second closing argument to be more instrumental in achieving this objective than putting an unsure alibi witness on the stand. (Id. 234). Mr. Tewell spoke with another experienced attorney, Mr. Eide, regarding his concerns about the value of Lamonte as an alibi witness, and Mr. Eide agreed with Mr. Tewell's assessment. (Id. at 231, 240). Mr. Tewell then consulted with Calef and told him that he did not consider Lamonte a strong alibi witness, and would not call him to testify, so as to preserve final closing argument. Mr. Tewell testified that Calef agreed with this recommendation and strategy, and told counsel it was counsel's decision to make. (Id. at 230-231, 232, 234-235). Mr. Tewell recalled that immediately after the State rested, Calef was asked if he wanted to testify, and whether he had then changed his mind at all about calling Lamonte and the other witnesses, and Calef said he did not. (Id. at 235).

A trial counsel's strategic or tactical choices in a criminal case, after a thorough investigation of the law and facts, "are virtually unchallengeable in an ineffective assistance

of counsel Strickland, 466 U.S. at 689-690.  Moreover, the fact that a chosen strategy or defense was ultimately unsuccessful does not mean that counsel's performance was ineffective. See Zamora v. Dugger, 834 F.2d 956, 959 (11th Cir. 1987) (attorney's tactical decision to employ an insanity defense may not have been successful in retrospect, but Strickland allows trial counsel great latitude to conduct a defense).  In this case, counsel made a reasoned strategic decision to preserve the right to make the final closing argument to the jury rather than present an alibi witness who was of little or no value to the defense. Calef has not shown that no reasonable attorney would have acted as Mr. Tewell did.

Ground two does not warrant federal habeas corpus relief.

Accordingly, the Court orders:

That Calef's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Calef and to close this case.

ORDERED at Tampa, Florida, on February 10, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
David Calif, Pro se